FILED

JUN 14 1999

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARCO A. PONCE-BRAN,

             Plaintiff,

    v.

SACRAMENTO NATURAL FOODS
COOPERATIVE, INC., KARMYN
KLEINSCHMIDT, STEPHANIE
MERRIMAN, PAM MUSANTE, JANET
WHALEN-ZELLER, JEROLD LIGONS,
REBECCA MILLER, YANTRA BERTELLI,
CYNTHIA JOHNSON and DONNA PITTS,

             Defendants.

_____/

NO. CIV. S-96-1749 LKK/JFM

O R D E R

    Before the court are the parties' cross-motions for summary judgment.  The court decides the motions on the pleadings and papers filed herein.  <u>See</u> Local Rule 78-230(h).

////

////

////

////

136

# I.

## THE FACTS[1]

Plaintiff is a former employee of defendant, the Sacramento Natural Foods Cooperative ("SNFC"). In April of 1995, plaintiff interviewed for a transfer from his position as a cash register clerk to SNFC's Health and Beauty Aids Department ("HABA"). During the interview, plaintiff informed the interviewer, Cynthia Johnson, that he would not be able to work on Saturdays for religious reasons.

SNFC hired another applicant, Andy Keogh, for the position. Keogh held different religious beliefs from plaintiff but, like plaintiff, informed SNFC that he could not work on Saturdays. On July 6, 1995, plaintiff resigned from his employment at SNFC. Thereafter, plaintiff filed this suit in propria persona against SNFC and a number of its employees.

# II.

## PROCEDURAL HISTORY

The court granted defendant's motions to dismiss plaintiff's original and first amended complaints as to some claims and denied them as to others. See Orders dated January 21, 1998 and July 20, 1998. On August 20, 1998, the court ordered plaintiff's second amended complaint stricken for failure to comply with the court's July 20, 1998 order granting leave to amend. Then, on August 27, 1998, plaintiff filed a

---

[1] The facts as stated herein are undisputed unless otherwise noted.

2

1  third amended complaint.

2      In his third amended complaint, plaintiff alleges three

3  Title VII violations against SNFC based on its failure to

4  accommodate plaintiff's religious beliefs, disparate treatment

5  of plaintiff due to his race, color or national origin and

6  retaliation against plaintiff for filing a complaint with the

7  Department of Fair Employment and Housing.  As to all defendants

8  (SNFC and the individual defendants), plaintiff alleges

9  violations of the Fair Employment and Housing Act (which

10 parallel his allegations under Title VII) as well as termination

11 in violation of public policy, defamation, interference with

12 prospective economic advantage and intentional infliction of

13 emotional distress.  Defendants move for summary judgment on all

14 of plaintiff's claims, and plaintiff cross-moves for summary

15 judgment.

16                              III.

17                           STANDARDS

18     Summary judgment is appropriate when it is demonstrated

19 that there exists no genuine issue as to any material fact, and

20 that the moving party is entitled to judgment as a matter of

21 law.  Fed. R. Civ. P. 56(c); See also Adickes v. S.H. Kress &

22 Co., 398 U.S. 144, 157 (1970); Owen v. Local No. 169, 971 F.2d

23 347,355(9th Cir. 1992).

24 ////

25 ////

26 ////

1    Under summary judgment practice, the moving party

2        [A]lways bears the initial responsibility of
         informing the district court of the basis
3        for its motion, and identifying those
         portions of "the pleadings, depositions,
4        answers to interrogatories, and admissions
         on file, together with the affidavits, if
5        any," which it believes demonstrate the
         absence of a genuine issue of material fact.
6

7 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here

8 the nonmoving party will bear the burden of proof at trial on a

9 dispositive issue, a summary judgment motion may properly be

10 made in reliance solely on the 'pleadings, depositions, answers

11 to interrogatories, and admissions on file.'"  Id.  Indeed,

12 summary judgment should be entered, after adequate time for

13 discovery and upon motion, against a party who fails to make a

14 showing sufficient to establish the existence of an element

15 essential to that party's case, and on which that party will

16 bear the burden of proof at trial.  Id. at 322.  "[A] complete

17 failure of proof concerning an essential element of the

18 nonmoving party's case necessarily renders all other facts

19 immaterial."  Id.  In such a circumstance, summary judgment

20 should be granted, "so long as whatever is before the district

21 court demonstrates that the standard for entry of summary

22 judgment, as set forth in Rule 56(c), is satisfied."  Id. at

23 323.

24    If the moving party meets its initial responsibility, the

25 burden then shifts to the opposing party to establish that a

26 genuine issue as to any material fact actually does exist.

4

1   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

2   586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv.

3   Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los

4   Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455

5   U.S. 951 (1980).

6        In attempting to establish the existence of this factual

7   dispute, the opposing party may not rely upon the denials of its

8   pleadings, but is required to tender evidence of specific facts

9   in the form of affidavits, and/or admissible discovery material,

10  in support of its contention that the dispute exists.   Rule

11  56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l

12  Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th

13  Cir. 1973).   The opposing party must demonstrate that the fact

14  in contention is material, i.e., a fact that might affect the

15  outcome of the suit under the governing law, Anderson v. Liberty

16  Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v.

17  Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

18  1987), and that the dispute is genuine, i.e., the evidence is

19  such that a reasonable jury could return a verdict for the

20  nonmoving party, Anderson, 477 U.S. 248-49; See also Wool v.

21  Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

22       In the endeavor to establish the existence of a factual

23  dispute, the opposing party need not establish a material issue

24  of fact conclusively in its favor.   It is sufficient that "the

25  claimed factual dispute be shown to require a jury or judge to

26  resolve the parties' differing versions of the truth at trial."

1  First Nat'l Bank, 391 U.S. at 290; See also T.W. Elec. Serv.,
2  809 F.2d at 631.  Thus, the "purpose of summary judgment is to
3  'pierce the pleadings and to assess the proof in order to see
4  whether there is a genuine need for trial.'"  Matsushita, 475
5  U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's
6  note on 1963 amendments); See also International Union of
7  Bricklayers & Allied Craftsman Local Union No. 20 v. Martin
8  Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

9       In resolving the summary judgment motion, the court
10 examines the pleadings, depositions, answers to interrogatories,
11 and admissions on file, together with the affidavits, if any.
12 Rule 56(c); See also SEC v. Seaboard Corp., 677 F.2d 1301, 1305-
13 06 (9th Cir. 1982).  The evidence of the opposing party is to be
14 believed, Anderson, 477 U.S. at 255, and all reasonable
15 inferences that may be drawn from the facts placed before the
16 court must be drawn in favor of the opposing party, Matsushita,
17 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S.
18 654, 655 (1962) (per curiam)); See also Abramson v. University
19 of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless,
20 inferences are not drawn out of the air, and it is the opposing
21 party's obligation to produce a factual predicate from which the
22 inference may be drawn.  See Richards v. Nielsen Freight Lines,
23 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d
24 898, 902 (9th Cir. 1987).

25      Finally, to demonstrate a genuine issue, the opposing party
26 "must do more than simply show that there is some metaphysical

1 doubt as to the material facts. . . . Where the record taken as

2 a whole could not lead a rational trier of fact to find for the

3 nonmoving party, there is no 'genuine issue for trial.'"

4 <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

IV.

ANALYSIS

7      Plaintiff alleges both federal and state claims.  Should

8 plaintiff fail to survive summary judgment on his Title VII

9 claims, the court will have the option of dismissing the

10 remainder of his claims since they arise under state law and

11 there is no diversity of citizenship between the parties.

12 Accordingly, I turn first to plaintiff's Title VII claims.

13 **A.    FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS**

14      Plaintiff alleges that SNFC chose Keogh for the HABA clerk

15 position because plaintiff requested Saturdays off to observe

16 his Sabbath.  Title VII provides that "[i]t shall be an unlawful

17 employment practice for an employer . . . to refuse to hire

18 . . . or otherwise to discriminate against any individual with

19 respect to his compensation, terms, conditions, or privileges of

20 employment because of such individual's . . . religion . . . ."

21 42 U.S.C. § 2000e-2(a).  Under Title VII an employer must make

22 "reasonable accommodations, short of undue hardship, for the

23 religious practices of his employees and prospective employees."

24 <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 74 (1977).

25      Title VII religious accommodation claims are assessed under

26 a two-part analysis.  <u>Heller v. EBB Auto Co.</u>, 8 F.3d 1433, 1438

7

1  (9th Cir. 1993).  First, the court must determine whether the

2  plaintiff can establish a prima facie case of religious

3  discrimination.  Id.  Second, if the employee does so, the burden

4  shifts to the employer to show that it "negotiate[d] with the

5  employee in an effort reasonably to accommodate the employee's

6  religious beliefs."  EEOC v. Hacienda Hotel, 881 F.2d 1504, 1513

7  (9th Cir. 1989).  In this case, the court need not reach the

8  second step, for plaintiff has failed to establish a prima facie

9  case of religious discrimination, i.e., that (1) he had a bona

10 fide religious belief, the practice of which conflicted with a

11 duty of his employment, (2) he informed SNFC of the belief and

12 the conflict, and (3) he was threatened with or subjected to

13 discriminatory treatment because of his inability to fulfill his

14 job responsibilities.  Heller, 8 F.3d at 1438.

15     As to the first element of plaintiff's prima facie case,

16 SNFC does not dispute that plaintiff had a bona fide religious

17 belief but does contest that practice of his beliefs conflicted

18 with the duties of a HABA clerk.  Like plaintiff, Keogh also

19 informed SNFC that he could not work Saturdays if selected for

20 the HABA position.  See Defs' Exh. D (Keogh's application

21 stating that he needed Saturdays off to visit with his son);

22 Decl. of Cynthia Johnson at ¶ 7 (averring that Keogh informed

23 her during the interview that he could not work Saturdays).

24 SNFC hired Keogh -- evidence that working on Saturdays was not a

25 duty of employment in the HABA Department.  Plaintiff thus

26 cannot meet the first element of his prima facie case.

1    Plaintiff cannot prove that SNFC subjected him to any
2  discriminatory treatment because of his inability to fulfill a
3  responsibility expected of HABA clerks.  Therefore, plaintiff
4  cannot prevail on the third element of his prima facie case.
5  Accordingly, defendants are entitled to summary judgment on
6  plaintiff's religious accommodation claim.

7  **B.    RETALIATION**

8    Plaintiff also alleges that SNFC denied him the HABA
9  position because (1) he protested against the use of evaluation
10  forms that had not been validated pursuant to the Uniform
11  Guidelines on Employee Selection Procedures and (2) he filed a
12  complaint with the DFEH on May 10, 1995.[2]  Title VII provides
13  that "[i]t shall be an unlawful employment practice for an
14  employer to discriminate against any of his employees . . .
15  because he has opposed any practice made an unlawful employment
16  practice by this subchapter . . ."  42 U.S.C. § 2000e-3(a).

17    The elements of a prima facie case for retaliation in
18  violation of Title VII are that the plaintiff engaged in a
19  protected activity and suffered an adverse employment decision
20  and that there was a causal link between the two.  Wrighten v.
21  Metropolitan Hospitals, Inc., 726 F.2d 1346, 1354 (9th Cir.
22  1984).  By establishing a prima facie case of retaliation, a
23  plaintiff effectively creates a presumption that his employer

24

25    [2]  Since plaintiff filed his DFEH complaint after defendants
    denied his transfer request, they could not possibly have denied
26  his application in retaliation for his DFEH complaint.

9

1   unlawfully discriminated against him.   <u>Texas Department of</u>

2   <u>Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).

3        Defendants do not dispute that plaintiff can establish a

4   prima facie case of retaliation in violation of Title VII.

5   Accordingly, the burden shifts to defendants to articulate a

6   "legitimate, non-discriminatory reason" for rejecting

7   plaintiff's application to the HABA Department.   <u>Wrighten</u>, 726

8   F.3d at 1354.   If defendants can articulate such a reason, the

9   presumption of unlawful discrimination "simply drops out of the

10   picture."   <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 511

11   (1993).

12        SNFC explains that it denied plaintiff's application

13   because his schedule preference included only thirty hours per

14   week with either an all-morning or all-evening schedule.

15   According to SNFC, "[g]iven the relatively small size of [the

16   HABA} Department, it is better . . . to have someone who can

17   work an irregular schedule or cover shifts on short notice if

18   another clerk is unable to work than one who is locked into only

19   mornings or evenings."   <u>See</u> Johnson Decl. at ¶ 7.   Since Keogh

20   indicated that he was willing to work forty hours per week on

21   any days and any times other than Saturday, SNFC had a

22   legitimate, non-discriminatory reason to select him, and not

23   plaintiff, for the HABA clerk position.

24        Because defendants have articulated a legitimate, non-

25   discriminatory reason for selecting Keogh, the burden shifts to

26   plaintiff to prove by a preponderance of the evidence that the

10

1  reason articulated by defendants is a mere pretext, a cover-up

2  for retaliating against him because he protested their alleged

3  failure to comply with the Uniform Guidelines on Employee

4  Selection Procedures.  Wrighten, 726 F.2d at 1354.  Plaintiff

5  must demonstrate "more than the minimum necessary to create a

6  presumption of discrimination under McDonnel Douglas . . . to

7  raise a triable issue of fact" as to pretext.  Wallis v. Simplot

8  Co., 26 F.3d 885, 890 (9th Cir. 1994).  Plaintiff must produce

9  "specific, substantial evidence of pretext."  Steckl v.

10 Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983).

11      To meet his burden plaintiff adduces evidence that Keogh

12 used the wrong application form, plaintiff had more seniority

13 than Keogh, plaintiff applied once before to work as a HABA

14 clerk but was rejected in favor of a white lesbian and SNFC

15 would not grant his transfer request because the HABA

16 Department's budget could not accommodate his wage level.

17 Plaintiff also alleges that Cynthia Johnson, HABA Department

18 Manager, admitted that plaintiff was more qualified than Keogh

19 for the position as HABA clerk.[3]

20      Assuming that plaintiff's evidence demonstrates pretext,

21 defendants may nonetheless prevail by demonstrating that they

22 would have chosen Keogh even in the absence of any reason to

23 _____

24      [3]  In support of this allegation, plaintiff cites defendants'
     answers to his interrogatories.  Examination of those answers
25   reveals that defendants merely declared that plaintiff was
     objectively qualified for the position; nowhere do their answers
26   state that plaintiff was more qualified than Keogh.  See Defs'
     Answer to Interrogatory No. 25.

1   retaliate against plaintiff.  <u>Ruggles v. California Polytechnic</u>

2   <u>State University</u>, 797 F.2d 782, 786 (9th Cir. 1985).  Defendants

3   adduce such evidence.

4      To begin, plaintiff's application for the HABA position

5   indicated that he was looking for employment outside SNFC and

6   reflected his feelings of estrangement from SNFC management.

7   <u>See</u> Defs' Exh. E.  During the interview, plaintiff's demeanor

8   indicated to Johnson that he harbored negative feelings toward

9   SNFC and that he was not excited about working in the HABA

10   Department, with Johnson or other HABA employees.  <u>See</u> Johnson

11   Decl. at ¶ 5.  Furthermore, plaintiff received two customer

12   service write-ups in April of 1995, the same month that he

13   applied for the HABA position.  <u>See</u> Pltf's Exh. 7.

14      In contrast, Keogh attached a letter to his application

15   demonstrating his enthusiasm for working in the HABA Department

16   and for continuing to work at SNFC in general.  Before

17   submitting his application, Keogh spoke to employees then

18   working in the HABA Department to learn more about the position.

19   "Keogh demonstrated superior customer service skills, a

20   willingness to learn, and an aptitude to embrace the team

21   approach . . . necessary for anybody working within the HABA

22   Department."  <u>See</u> Johnson Dec. at ¶ 4.  "HABA clerks spend most

23   of their time with the public" -- Keogh's positive attitude made

24   him a good fit for the position.  <u>See</u> <u>id</u>.

25      Considering the small size of the HABA Department (six

26   employees) and the importance of customer service skills and

1  contrasting the enthusiasm communicated by Keogh to the

2  pessimism communicated by plaintiff, defendants have

3  demonstrated that no reasonable jury would conclude that they

4  would not have chosen Keogh even in the absence of any reason to

5  retaliate against plaintiff.  Accordingly, summary judgment is

6  proper for defendants on plaintiff's Title VII retaliation

7  claim.

8  **C.    DISPARATE TREATMENT**

9       Plaintiff also alleges that defendants rejected his

10  application for the HABA position on the basis of his race,

11  color or national origin.  Title VII prohibits such

12  discrimination in employment.  <u>See</u> 42 U.S.C. § 2000e-2(a)(1).

13  A plaintiff may show a violation of Title VII "by proving

14  disparate treatment or disparate impact . . ."  <u>Sischo-Nownejad</u>

15  <u>v. Merced Community College dist.</u>, 934 F.2d 1104, 1109 (9th Cir.

16  1997).  Plaintiff seeks to prove the former.  To do so,

17  plaintiff must show that he was "singled out and treated less

18  favorably than others similarly situated on account of his

19  [race, color or national origin]." <u>Gay v. Waiters' and Dairy</u>

20  <u>Lunchmen's Union</u>, 694 F.2d 531, 537 (9th Cir. 1982).

21       The same burden-shifting analysis used to analyze Title VII

22  retaliation claims applies to the analysis of Title VII

23  disparate treatment claims.  <u>Odima v. Westin Tucson Hotel Co.</u>,

24  991 F.2d 595, 599-601 (9th Cir. 1993).  Thus, for the reasons

25  discussed in the preceding section, defendants have demonstrated

26  that they would have selected Keogh for the HABA clerk position

even if they had no prejudice against plaintiff's race, color or
national origin.  Accordingly, defendants are entitled to
summary judgment on plaintiff's Title VII disparate treatment
claim.

IV.

ORDERS

For all the foregoing reasons, the court hereby makes the
following ORDERS:

1.   Defendants' motion for summary judgment on plaintiff's
Title VII claims is GRANTED;

2.   The remainder of plaintiff's claims are DISMISSED for
lack of subject matter jurisdiction; and

3.   The Clerk is directed to CLOSE the case.

IT IS SO ORDERED.

DATED:   June 11, 1999.

LAWRENCE K. KARLTON
CHIEF JUDGE EMERITUS
UNITED STATES DISTRICT COURT

United States District Court
for the
Eastern District of California
June 14, 1999

\* \* CERTIFICATE OF SERVICE \* \*

2:96-cv-01749

Ponce-Bran

    v.

Sacto Natural Foods

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  June 14, 1999, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

        Marco A Ponce-Bran               SJ/LKK
        1100 17th Street
        Suite 202
        Sacramento, CA  95814

        Ross R Nott
        Edson LaPlante and Spinelli
        Wells Fargo Center
        400 Capitol Mall
        Suite 2060
        Sacramento, CA  95814

*VAC PT 9/13/99, JT 11/16/99*

                            Jack L. Wagner, Clerk

                    BY: _____
                      Deputy Clerk